The CITY OF EL PASO, Appellant,

v.

Harold COLLINS and Catherine Teague–Collins, Individually and Next Friends of Jade Collins, A Minor, and Jasmine Collins, A Minor, Appellees.

No. 08–14–00319–CV

Court of Appeals of Texas, El Paso.

January 20, 2016

Oscar G. Gabaldon, Jr., Laura P. Gordon, for The City of El Paso.

Joseph Isaac, Jeffrey B. Pownell, for Harold Collins and Catherine Teague–Collins, Individually and Next Friends of Jade Collins, A Minor, and Jasmine Collins, A Minor.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

STEVEN L. HUGHES, Justice

The Collins sued the City of El Paso raising premises liability and negligent use claims after their child suffered injuries at a City swimming pool. The City filed a plea to the jurisdiction seeking dismissal based on governmental immunity. The trial court denied the plea, and this interlocutory appeal followed. We reverse the trial court in part and dismiss the Collins' negligent use claim for lack of subject matter jurisdiction. We affirm the trial court's refusal to dismiss the premises liability claim and remand that claim for further proceedings in accordance with this opinion.

## BACKGROUND

On June 13, 2008, the Collins' two six-year-old children, Jade and Jasmine, were taken on a field trip by their day care center to a swimming pool owned and operated by the City. Jade, who was unable to swim, went unsupervised into an area of the pool where she could not stand up. According to a police report attached to the Collins' pleadings, an individual at the pool felt Jade bump against him while she was submerged in the water. The individual dove to the bottom of the pool to rescue her. The individual reported that he could not "tell if [Jade] was actually swimming due to the water being extremely cloudy" and that he could not see the bottom of the pool until he dove into the water. Once he reached the bottom of the pool, the individual observed that Jade's hand was "caught in the grooves" of the drainage grate, but he was nevertheless able to pull Jade out of the water and bring her to the surface. Although Jade survived, she was unconscious when pulled from the pool, and, according to the Collins, she suffered "severe and substantial injuries from her near-death drowning[.]"

The Collins initially sued only the daycare center for its alleged negligence in failing to supervise Jade at the pool, asserting that Jade was under the daycare center's "care and control" and that the daycare center was negligent in allowing Jade to swim in the pool given its cloudy condition. The daycare center subsequently filed a motion to designate the City as a responsible third party, claiming that Jade's injuries were proximately caused by a defect in the pool's filtration system that caused the water to become cloudy.

The Collins then amended their petition to name the City as a defendant as well. In their Fifth Amended Petition, the Collins raised three causes of action against the City: (1) a claim they labeled, "Responsible Third Party Designation," asserting generally that the City was at least partially responsible for Jade's injuries; (2) a premises liability claim, alleging both that the pool had a "defective drain, drain cover, and filtration system which allowed children to become entrapped or entangled, thereby creating a drowning hazard," and that there were malfunctions in the filtration system that caused the water in the pool to become "very cloudy, to the point that the black lines at the bottom of the pool were unnoticeable"; and (3) a negligent use claim, based on City employees' alleged "misuse" of property at the pool, which included using the pool's allegedly defective equipment and allowing the public to "use" the cloudy water.

The City filed a plea to the jurisdiction with regard to the Collins' Fifth Amended Petition, contending that the Collins had failed to properly plead any causes of action for which governmental immunity was waived under the Texas Tort Claims Act. The trial court denied the plea, and the City filed its first interlocutory appeal, which we considered in *City of El Paso v. Collins*, 440 S.W.3d 879 (Tex.App.—El Paso 2013, no pet.) (*"Collins I"*).

### The First Interlocutory Appeal

In *Collins I*, we were faced solely with the question whether the Collins' pleadings stated a valid claim against the City for which governmental immunity had been waived. *Id.* at 883. We considered each of the Collins' claims separately, reaching varying conclusions as to each.

First, we agreed with the City that the cause of action seeking to hold the City liable as a "responsible third party" did not state a cause of action for which governmental immunity had been waived, and we reversed and rendered judgment dismissing that claim. *Id.* at 883, 888–89.

Second, we recognized that a governmental entity's immunity is waived for a valid premises liability claim under the Tort Claims Act, but concluded that the Collins had failed to properly plead the requisite elements of a premises liability claim. *Id.* at 886–87. In particular, we held that the Collins' lawsuit was governed by the Recreational Use Statute, which requires a plaintiff to allege that a defendant who has opened his premises up to recreational use acted with gross negligence and in turn requires a plaintiff to plead that the defendant engaged in an act that involved an extreme degree of risk and that the defendant had actual subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others. *Id.* at 885–86. We held that while the Collins had made conclusory allegations that the City acted with gross negligence, they had failed to make any allegations that the City had subjective knowledge of any alleged defects or malfunctions in the pool's equipment that posed an extreme risk that children swimming at the pool could become entrapped in the drain, or that the cloudy water prevented others from seeing that a child was trapped. *Id.* at 886. We also concluded that the Collins had failed to properly allege that the defects were the proximate cause of Jade's injuries. *Id.* at 886–87. Nevertheless, our review of the record convinced us that it was not impossible for the Collins to plead the requisite elements of their premises liability claim, and we therefore remanded the case to give the Collins the opportunity to amend their pleadings to state a valid premises liability claim for which governmental immunity had been waived. *Id.*

Third, we construed the Collins' third claim as an attempt to bring a negligent use cause of action against the City under Section 101.021(2) of the Tort Claims Act, for the City's alleged misuse of tangible property at the pool. *Id.* at 887. While we noted that the City's immunity is generally waived for a valid negligent use claim under the Tort Claims Act, we declined to consider whether the Collins had properly pleaded a negligent use claim because the City had not directly raised that issue on appeal. *Id.* at 888.

## Proceedings on Remand

On remand, the Collins filed three additional amended petitions—a Sixth Amended, a Seventh Amended, and a Supplemental Petition—in which they alleged, in accordance with our opinion in *Collins I,* that the City had been "subjectively aware" of the extreme risk of harm that was posed by two separate allegedly dangerous conditions at the pool.[1] In particular, the Collins claimed that the City was aware that the "pool's malfunctioning filtration and draining system created an extreme risk of harm to Plaintiff JADE COLLINS and other children who were authorized and permitted to use and swim in the Veteran's Park Pool, by (1) creating an extremely dangerous suction in the drain at the bottom of the pool, which was substantially certain to trap small children and prevent them from coming up for air that would result in the trapped child's drowning and death; and by (2) allowing the pool water quality to become so cloudy and murky that it would prevent others, including lifeguards and other persons in the immediate vicinity of the pool area, from being able to see a child trapped by

1. In their Sixth Amended Petition, the Collins failed to plead proximate cause as instructed in *Collins I.* After the City filed a plea to the jurisdiction, the trial court allowed the Collins to once again amend their pleadings, and the Collins thereafter filed their Seventh Amended Petition, which sufficiently alleged proximate cause.

the suction in the drain at the bottom of the pool."[2]

Although the City never came forward with any of its own evidence to dispute any of the Collins' factual allegations, the Collins summarized and attached to their Seventh Amended Petition an excerpt from the deposition testimony of the City's aquatics manager, Wright Stanton, as "jurisdictional evidence" to support their claim that the City acted with "gross negligence." In the attached excerpt, Stanton agreed with a hypothetical question posed to him that if pool water becomes so cloudy that the black lines at the bottom of the pool cannot be seen, it would be "grossly negligent" to allow swimmers to use the pool. Stanton also explained, however, that he was not responsible for the "day-to-day maintenance" of the swimming pool and that he had no personal knowledge of the conditions of the pool at the time of Jade's accident. Stanton also testified that he had never been made aware of any problems with the "drains or the suction of the drains on the bottom of Veterans Park pool[.]"

The City responded to the Seventh Amended Petition by filing yet another plea to the jurisdiction. In that plea, the City alleged that the Collins had made only conclusory allegations that the City had actual knowledge of any dangerous conditions at the pool on the day of Jade's accident. The City argued that the Collins were required to "plead and prove" specific facts demonstrating that the City had actual knowledge of a dangerous condition

at the pool, including "how or why the City could have been aware" of the dangerous conditions existing at the pool. The City contended that the Collins' use of Stanton's deposition did not support their allegations, because Stanton testified only from a hypothetical standpoint, and pointed out that Stanton provided no testimony on the critical issue whether the City had knowledge of any dangerous condition existing at the pool on the day of Jade's accident. The City did not explicitly rely on Stanton's deposition testimony that he was unaware of any problems as proof that the City itself did not have actual knowledge of any dangerous conditions at the pool.

After filing their Seventh Amended Petition, the Collins settled their claims with the daycare center, and subsequently filed a "Supplemental Petition," in which they eliminated their claims against the daycare center, and continued to assert their premises liability and negligent use claims against the City. Although the City had still not come forward with any evidence to rebut the Collins' factual allegations, the Collins summarized and attached numerous items of evidence to their Supplemental Petition, which they labeled as "jurisdictional evidence," in an attempt to support their allegation that the City had actual knowledge of a dangerous condition at the pool on the day of Jade's accident.

In particular, the Collins attached reports from an El Paso Police Officer and an employee of the Texas Department of Family and Protective Services (TDFPS),

2. The Collins also alleged that the drain and other mechanical systems at the pool were in violation of numerous state regulations, which required that the pool be shut down and closed "so that it would not pose an extreme risk of danger" to Jade and other children at the pool. The Collins listed a variety of administrative code provisions found in Chapter 25 of the Texas Administra-

tive Code, setting forth the standards for the design, installation, and maintenance of filters, pumps, drains, and suction outlets in pools and spas. However, the Collins never explained how the equipment at the pool varied from these standards, and they failed to allege that the City was aware of these alleged code violations.

who conducted a joint investigation three days after Jade's accident. The reports disclosed that Jade's rescuer indicated that when he found Jade at the bottom of the pool, her hand was stuck in the drainage grate, and that the pool water was "extremely cloudy" that day. The police officer stated in his report that when he went to the pool three days after Jade's accident, he "observed the pool's filtration not to be working and the water to have very poor visibility." The report also indicated that the officer later learned that the City had closed the pool due to "faulty equipment."

According to the TDFPS report, an unidentified lifeguard informed the TDFPS investigator that he and other City employees had been aware that the "pool system" had been "malfunctioning" since the day before Jade's accident, and that the "water was not being filtered properly and as a result the water was cloudy to the point you could not see the black lines in the bottom of the pool." The lifeguard acknowledged, however, that he was not present at the time of Jade's accident, but had been on duty at the pool earlier that same morning. The Collins also attached a follow-up police report, indicating that another El Paso police officer spoke with the TDFPS investigator six months after Jade's accident, who informed the officer that a lifeguard had told the TDFPS investigator that the "filters were not working properly and that the water was cloudy," and that the lifeguards had been "instructed to allow people to swim anyways."[3]

Finally, in addition to again summarizing Stanton's deposition testimony in their pleadings, the Collins summarized and attached an excerpt from the deposition testimony of a lifeguard who had been on duty at the time of Jade's accident. In this excerpt, this lifeguard responded in the affirmative to hypothetical questions asking whether it would be "negligent" or "extremely dangerous" to allow the public to swim in water that was so cloudy that the black lines at the bottom of the pool could not be seen. The lifeguard never testified, however, to the actual condition of the water on the day of Jade's accident.

The City then filed its final plea to the jurisdiction—the plea at issue in this appeal—and not only attacked the sufficiency of the pleadings in the Collins' Supplemental Petition, but also challenged the admissibility and the sufficiency of the evidence that the Collins summarized and attached to their Supplemental Petition. The City argued that the evidence presented by the Collins, even if admissible, did not meet the Collins' burden to establish that the City had actual knowledge of any allegedly dangerous conditions at the pool on the day of Jade's accident, and had at most established that there was a problem with the filtration system three days after Jade's accident.

The City again expressed its belief that the Collins were "required to plead and prove" specific facts supporting their claim of gross negligence, and were therefore required to "show" that the City had actual knowledge of a dangerous condition at the pool, but had failed to do so. In particular, the City pointed out that the Collins had failed to identify any witnesses who would be able to testify that the City, or its agents, knew about the allegedly dangerous conditions at the pool. The City also pointed out that the Collins had also failed to identify any prior incidents

---

**3.** The supplemental police report stated that various other City employees had provided statements about Jade's accident. None of those statements are part of the appellate record, however, and it does not appear that they were presented to the trial court when it considered the City's plea to the jurisdiction.

occurring at the pool, which were similar in nature or close in time to Jade's accident, that would have put the City on notice that a hazard existed at the pool. Concluding that the Collins had failed to "articulate a single reliable fact" in support of their allegation that the City had knowledge of the allegedly dangerous conditions at the pool, the City argued that the Collins had once again failed to "plead and prove" a valid claim of premises liability for which the City's governmental immunity had been waived.

## DISCUSSION

### Issue One: Whether the Collins Failed to Plead or Prove a Premises Liability Claim for Which Governmental Immunity was Waived

In its first issue, the City contends that the trial court erred in denying its plea to the jurisdiction on the Collins' premises liability claim because the Collins failed to plead or prove a valid premises liability claim for which governmental immunity has been waived.

### Standard of Review

■ In a plea to the jurisdiction, a defendant may challenge either the adequacy of the plaintiff's pleadings or the existence of "jurisdictional facts" on the ground that they do not support a finding of subject matter jurisdiction. *Collins I*, 440 S.W.3d at 883 (citing *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004)). The questions whether the plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, as well as whether undisputed evidence of jurisdictional facts establishes a trial court's lack of jurisdiction, are both questions of law which an appellate court reviews *de novo*. *Miranda*, 133 S.W.3d at 226.

### Governmental Immunity

■ As we explained in *Collins I*, the State of Texas and its political subdivisions, including cities and counties, have immunity from lawsuits seeking monetary damages unless immunity is clearly and unambiguously waived by statute. *Collins I*, 440 S.W.3d at 884 (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex.2006)); *see also* TEX. GOV'T CODE ANN. § 311.034 (West 2013) (a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language). Immunity from suit deprives a trial court of subject matter jurisdiction, and requires us to dismiss any claims for which jurisdiction is lacking. *Collins I*, 440 S.W.3d at 884 (citing *Miranda*, 133 S.W.3d at 224); *see also State v. Shumake*, 199 S.W.3d 279, 283 (Tex.2006).

The Legislature has provided a limited waiver of governmental immunity in the Texas Tort Claims Act. The Texas Tort Claims Act allows suits against governmental entities for, among other things, personal injuries arising from a "premise defect," as well as from the "condition or use of tangible personal ... property[.]" TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.022 (West 2011); *see also State v. Gonzalez*, 82 S.W.3d 322, 326 (Tex. 2002).

### Premises Liability Claims and the Recreational Use Statute

■ As we recognized in *Collins I*, the elements of a premises liability cause of action under the common law require that the owner have actual or constructive knowledge of some condition on the premises posing an unreasonable risk of harm, that the owner did not exercise reasonable care to reduce or eliminate that risk, and that the owner's failure to use such care

proximately caused the plaintiff's injuries. *Collins I,* 440 S.W.3d at 884 (citing *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex. 1992)). The waiver of governmental immunity for premises liability in the Texas Tort Claims Act is expressly limited by Section 101.022(a) of the Act, which provides that a governmental entity owes to the claimant only the duty a private individual would owe to a licensee on private property, unless the claimant pays for the use of the premises. *Id.; City of Irving v. Seppy,* 301 S.W.3d 435, 441 (Tex.App.– Dallas 2009, no pet.); *see also Univ. of Texas at Austin v. Hayes,* 327 S.W.3d 113, 115–16 (Tex.2010).

The government's immunity is further limited by the Recreational Use Statute found in Chapter 75 of the Texas Civil Practices and Remedies Code, when an injury or death results on property that is open to the public for recreational purposes.[4] *Shumake,* 199 S.W.3d at 284–85; *see also Suarez v. City of Texas City,* 465 S.W.3d 623, 632 (Tex.2015); *Collins I,* 440 S.W.3d at 884–88. In order to encourage the use of recreational property, the statute limits liability for both governmental and private entities by providing that the owner or occupier of real property does not assure that the premises are safe for recreational purposes and does not assume responsibility for the actions of those admitted to the property. *Shumake,* 199 S.W.3d at 284–85. The statute further creates a legal fiction, classifying the invited recreational user of the property as a trespasser, and imposing that limited standard of care upon the landowner.[5] *Id.*

▮ At common law, a premises owner owes a trespasser only the limited duty not to injure the trespasser willfully, wantonly, or through gross negligence. *Shumake,* 199 S.W.3d at 285; *Miranda,* 133 S.W.3d at 225; *Texas Util. Elec. Co. v. Timmons,* 947 S.W.2d 191, 193 (Tex.1997).

**4.** The Collins do not dispute that Jade was engaged in a recreational activity, and acknowledge that the Recreational Use Statute therefore applies to their case. As used in the Recreational Use Statute, the term "recreation" expressly includes the activity of "swimming." TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3) (West Supp.2015); *Suarez,* 465 S.W.3d at 632 (family was engaged in activities of swimming and picnicking when drownings occurred, thereby invoking the application of the Recreational Use Statute).

**5.** The Recreational Use Statute is found in Section 75.002 of the Texas Civil Practices & Remedies Code, and provides, in pertinent part:

(c) If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:
(1) assure that the premises are safe for that purpose; (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.
(d) Subsections (a), (b), and (c) shall not limit the liability of an owner, lessee, or occupant of real property who has been grossly negligent or has acted with malicious intent or in bad faith.
TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(c)(d) (West 2011).
In reciprocal statutes, the Legislature has made it clear that when a plaintiff engaged in recreational activity is injured on property owned or operated by a government entity, the more stringent standards for imposing liability set forth in the Recreational Use Statute control over the standard set forth in the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.058 (West 2011) ("[t]o the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under this chapter, Chapter 75 controls."); *Id.* at § 75.003(g) (West Supp.2015) ("To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under Chapter 101, this chapter controls.").

The duties owed to a trespasser and those owed to a recreational user are not identical. In particular, as noted in *Miranda*, the Legislature added the requirement that in order to assert liability under the Recreational Use Statute, the plaintiff must make a showing of gross negligence, malicious intent, or bad faith. *Miranda*, 133 S.W.3d at 225 n. 5 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(d)); *see also Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 659 (Tex.2007) (noting that the statute effectively requires a showing of either gross negligence or an intent to injure). In turn, the Supreme Court has on numerous occasions interpreted "gross negligence," as used in the Recreational Use Statute, to involve the following two components: "(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Miranda*, 133 S.W.3d at 225; *see also Suarez*, 465 S.W.3d at 633; *Shumake*, 199 S.W.3d at 287 ("Both this Court and the Texas Legislature have defined gross negligence as an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others.").

### The Sufficiency of the Pleadings

We first examine whether the Collins properly pleaded a claim for premises liability for which governmental immunity has been waived. When a plea to the jurisdiction challenges the sufficiency of the pleadings, our task is to determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Miranda*, 133

S.W.3d at 226. As we noted in *Collins I*, when our review is restricted to the pleadings, we must construe the pleadings "liberally in favor of conferring jurisdiction." *Collins I*, 440 S.W.3d at 883–84 (citing *Tex. Dept. of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002)).

On remand from the City's first interlocutory appeal, the Collins amended their petition in accordance with our holding in *Collins I*, and expressly alleged that the City was not only aware that there was a malfunction or defect in the pool's mechanical systems, but that this malfunction or defect was (i) creating a dangerous "suction" in the drain on the day of Jade's accident, which posed a risk that young children could become entrapped and thereby drown, and (ii) further causing the water in the pool to become so cloudy that it prevented others from seeing that a child had been trapped. As we also instructed, the Collins amended their pleadings to expressly allege that Jade's hand did in fact get entrapped in the pool's drainage system and that her rescue was delayed by the cloudy condition of the pool, both of which they alleged proximately caused Jade's injuries.

The City contends that these allegations are still insufficient to support the Collins' claim of gross negligence, because they are too "conclusory" or based merely on "speculation and assumptions[.]" The City argues, without citation to authority, that the Collins had the burden of pleading "specific" facts that would demonstrate how or why the City had become aware of the dangerous conditions on the premises. In particular, the City contends that the Collins were required in their pleadings to identify witnesses who could otherwise come forward with evidence establishing that the City had knowledge of the dangerous conditions existing at the pool, or, alternatively, to allege facts suggesting

that the City had received prior reports of other incidents involving children who were placed in danger at the pool due to these same dangerous conditions, which were "similar in nature or close in time" to Jade's accident. The City contends the Collins have "not identified a single factual basis for their assumptions" that the City had knowledge of any dangerous condition on the premises posing a risk to young swimmers at the time of Jade's accident.

■ We do not agree with the City that such a level of specificity is required. The standard for pleading a case against a governmental entity under the Recreational Use Statute is no different than the pleading standard required under the Texas Rules of Civil Procedure. The plaintiff is only required to "give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved." *Miranda*, 133 S.W.3d at 230 (citing TEX. R. CIV. P. 45, 47). The rules on pleading do not "require that the plaintiff set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *Id.* (citing *Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex.1988)). Instead, it is sufficient if the plaintiff simply pleads the basic facts of the case, so as to allow the court to determine whether the plaintiff has sufficiently alleged a cause of action for which governmental immunity has been waived. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex.2012) (a plaintiff's burden in an age discrimination case against a governmental entity is to "plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation"); *Tarrant County v. Morales*, 207 S.W.3d 870, 876 (Tex.App.—Fort Worth 2006, no pet.) (plaintiff, who claimed that she was injured when a row of chairs fell on her, properly pled a premises liability claim against the county, when she alleged that the county knew that the seats were not properly fastened to the floor, but did nothing to fix the problem or to warn her of the danger).

■ In the present case, the Collins properly alleged that the City had subjective knowledge that two dangerous conditions existed on the premises on the day of Jade's accident, *i.e.*, the "suction" that allegedly existed at the bottom of the pool and the cloudy condition of the water, and that the City knew that these two conditions posed an extreme risk of harm to young swimmers. Under the standards set forth above, the Collins were under no obligation to elaborate further on the evidence upon which they intended to rely at trial to prove their allegations.

■ However, as the City points out, our inquiry may not stop here, as the Collins were required to plead one last key element to support their claim—that the City had a legal duty to warn the public about the two dangerous conditions existing on the premises or to otherwise rectify the conditions. Whether a defendant owed a legal duty to a plaintiff is considered an essential element of the plaintiff's claim in a premises liability case, which must be established by the parties' pleadings. *See Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 209 (Tex.2015); *see also City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex.2009) (a landowner may be held liable for gross negligence occurring on its premises "only to the extent that it owed the plaintiff a legal duty"). The question whether a landowner owes a duty to an individual on its property is a question of law for a court to decide. *Kroger Texas, L.P.*, 465 S.W.3d at 209 (citing *General Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex.2008)).

The City contends that the Collins' own pleadings affirmatively negate the allegation that the City owed any duty to the Collins. In particular, the City argues that the primary condition that the Collins complain about in their pleadings, i.e., the cloudy water, was an "open and obvious" condition for which the City had no duty to warn or rectify. If in fact the cloudy water was the only condition the Collins complained of in their petition, we would agree.

The Supreme Court has repeatedly held that a landowner, whether private or public, has no legal duty to warn or protect recreational users from defects or conditions on property that are open and obvious. See, e.g., Kirwan, 298 S.W.3d at 623; see also Austin v. Kroger Texas, L.P., 465 S.W.3d 193, 210 (Tex.2015) (in a typical premises-liability case, the "landowner's only duty is to warn of concealed dangers"); Suarez, 465 S.W.3d at 633 (governmental entity owes no duty to warn of "premises conditions that are open and obvious, regardless of whether such conditions are artificial or naturally occurring"); Shumake, 199 S.W.3d at 288 (landowner has no duty to warn or protect trespassers from obvious defects or conditions on its property).

In determining whether the City owed a legal duty to warn of the cloudy condition of the pool on the day of Jade's accident, we find the Supreme Court's decision in Shumake instructive. In Shumake, the Court was faced with a situation in which a nine-year-old child was tubing in a river located in a state park operated by the Texas Parks & Wildlife Department (TPWD), along with her family. Shumake, 199 S.W.3d at 281. It was alleged that a man-made structure, an underground culvert, had interacted with the water in the river to create a powerful undertow that sucked the child underwater and trapped her in the culvert, leading to her death by drowning. In discussing whether the plaintiff had pled a waiver of immunity, the Court found two factors to be of primary significance. First, the Court noted that it was alleged TPWD had been put on notice of the danger that the undertow created, because at least three other near-drownings were reported to the agency just days before the child's drowning. Id. at 281. The Court also noted that the risk of drowning created by the undertow was a hidden, latent danger, which the public would have no way of knowing they might encounter in the culvert. The Court therefore concluded that the TPWD would owe a duty to the plaintiffs, at a minimum, to warn of the hidden risk of injury posed by the undertow, and that any failure to take any action in the face of this known danger could be sufficient to support a claim that TPWD acted with gross negligence under the Recreational Use Statute. Id. at 288.

The Court in Shumake was careful to distinguish between conditions on property that involve "hidden" perils or dangers, for which a duty exists to either warn or rectify, and those that may be considered "obvious defects or conditions," for which no such duty exists. Id. In fact, in recreational use cases, the Court has consistently refused to impose a duty on a defendant, whether private or governmental, when the danger existing on its premises is not hidden or latent, and is instead "open and obvious" to the recreational user. See, e.g., Kirwan, 298 S.W.3d at 623, 624 (Court refused to impose a duty on municipality in premises liability case for failing to warn visitor to city park of the inherent risk of sitting on an unstable rock that was on the edge of a cliff, concluding the risk was the "sort of dangerous natural condition that both a landowner and recreational user could foresee would pose a risk"); Flynn, 228 S.W.3d at 655, 659–60

(city owed no duty to warn or protect a cyclist riding on a public path through a city park about the danger from a visible oscillating sprinkler that knocked the cyclist off her bicycle); *see also Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 727 (Tex.App.—Corpus Christi 2007, no pet.) (state did not owe a duty to family whose child was burned when she fell into a campfire ring containing hot coals and ashes left behind by previous occupants at a campsite, where the danger from the campfire would have been open and obvious to any visitor to the park); *Kopplin v. City of Garland*, 869 S.W.2d 433, 441 (Tex. App.—Dallas 1993, writ denied) (the danger of falling from playground equipment was "open and obvious" even to a young child).

In the present case, the Collins alleged that the pool water on the day of Jade's accident was "so cloudy and poor that the black lines at the bottom of the pool" could not be seen, making it extremely dangerous for swimmers to be in the pool on the day of Jade's accident. This factual allegation contains within it a double-edged sword. While the Collins allege that the water in the pool was so cloudy that it posed an extreme danger to the patrons at the pool, this very allegation also leads to the inexorable conclusion that the cloudy nature of the pool would have been open and obvious to virtually any member of the public in attendance at the pool—a condition for which the City would owe no duty to warn or otherwise rectify.

Courts in other states considering similar issues have concluded that a pool owner owes no duty to warn of the obvious risk of danger posed to guests using swimming pools containing cloudy water. *See, e.g., Alabama Farm Bur. v. Hixon*, 533 So.2d 518 (Ala.1988) (reversing a jury award to the family of a five-year-old child who drowned in an apartment complex pool, allegedly containing cloudy water, finding that the complex owed no duty to the decedent or his family in light of the "obvious" risk of swimming in cloudy water); *Grimes v. Hettinger*, 566 S.W.2d 769, 773 (Ky.App.1978) (upholding summary judgment in favor of a homeowner, where a 12-year-old girl drowned while attending a party at a private residential swimming pool, which the plaintiffs claimed contained cloudy water, because the homeowner owed no duty to warn the decedent of a "readily apparent" condition); *see also Mullens v. Binsky*, 130 Ohio App.3d 64, 719 N.E.2d 599, 604 (1998) (absent hidden defects, homeowner owed no duty to either minors or adults swimming at its pool, as the risk of drowning in a pool is an "open and obvious condition which even children of tender years are able to appreciate").

If in fact the Collins had alleged in their pleadings that the cloudy water was the *only* dangerous condition existing at the pool at the time of Jade's accident, we would agree with the City that the Collins' own pleadings negated the existence of any duty owed by the City, in light of the open and obvious dangers associated with swimming in cloudy water. *See, e.g., Miranda*, 133 S.W.3d at 227 (if a party's factual allegations "affirmatively negate" the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend). However, the Collins did not simply allege that the pool water was dangerously cloudy on the day of Jade's accident; instead, they also alleged that the cloudy water concealed a hidden, latent danger—the "suction" allegedly occurring at the bottom of the pool that entrapped Jade's hand.

The pleadings in this case raise a somewhat similar scenario faced by our sister court in *City of Houston v. Cavazos*, 811 S.W.2d 231 (Tex.App.—Houston [14th Dist.] 1991, writ dism'd), in which a young

child walking through a city park slipped into a pool of cloudy water and drowned. In that case, the plaintiff presented evidence that the child drowned not simply because of the murky water, but because the murky water hid a dangerous condition—a 15–foot drop off—and because the City was aware of the dangers posed by that hidden condition from prior drownings that had occurred in that same area due to the same condition. The court therefore concluded that the question whether the City was grossly negligent in failing to warn visitors to the park of the danger of the hidden drop-off was properly submitted to the jury. *Id.* at 234–35.

As in *Cavazos,* the Collins have properly pleaded that the City was aware of not only the cloudy condition of the water, but also a hidden defect at the pool which caused Jade's near-drowning, *i.e.,* the suction allegedly occurring at the drain site that caused Jade to become entrapped or entangled. At the pleading stage, we find these factual allegations sufficient to support a claim for premises liability for which governmental immunity is waived.

### The Sufficiency of the Jurisdictional Evidence

■ The City challenged not only the sufficiency of the factual allegations set forth in the Collins' pleadings, but also the admissibility and the sufficiency of the "jurisdictional evidence" that the Collins presented in support of their claim that the City had actual subjective knowledge that a dangerous condition existed at the pool on the day of Jade's accident, which posed an extreme risk of harm to the public.

■ When a defendant brings a plea to the jurisdiction challenging the existence of jurisdictional facts, a court must not only review the plaintiff's pleadings, but must also review the "relevant evidence submitted by the parties when nec-

essary to resolve the jurisdictional issues raised[.]" *Miranda,* 133 S.W.3d at *227; see also Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000) (confining the evidentiary review in a plea to the jurisdiction to evidence that is relevant to the jurisdictional issue only). As the Court explained in *Miranda,* the standard a court should apply in resolving pleas to the jurisdiction when the defendant has attached evidence to its plea generally mirrors the standard that is applied in traditional summary judgment proceedings under Texas Rule of Civil Procedure 166a(c). *Miranda,* 133 S.W.3d at 228. Once the governmental entity asserts and otherwise supports with evidence that the trial court lacks subject matter jurisdiction, the burden shifts to the plaintiff, who is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* (citing *Huckabee v. Time Warner Entm't Co. L.P.,* 19 S.W.3d 413, 420 (Tex.2000)). This procedure allows the governmental entity to "extricate itself from litigation if it is truly immune" at an early stage in the proceedings before the entity has been required to incur the full costs of litigation, but also preserves the plaintiff's right to bring its claims when there are factual issues remaining on the question of jurisdiction. *Id.* If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction may be ruled on as a matter of law. *Id.; see also Mayfield v. Tarrant Reg'l Water Dist.,* 467 S.W.3d 706, 711–12 (Tex.App.—El Paso 2015, no pet.); *Tirado v. City of El Paso,* 361 S.W.3d 191, 194–95 (Tex.App.—El Paso 2012, no pet.).

However, as this Court has previously explained, this burden-shifting procedure is akin to a traditional summary judgment proceeding. Therefore, unlike the no-evidence summary judgment procedures de-

scribed in section 166a(i) of the Texas Rules of Civil Procedure, under this procedure, a defendant "cannot simply deny the existence of jurisdictional facts and force the plaintiffs to raise a fact issue." *Tirado*, 361 S.W.3d at 196. Instead, to invoke this burden-shifting procedure, the defendant bears the initial burden to show "through its plea to the jurisdiction and attached evidence that it did not owe a duty as a matter of law and therefore the [plaintiff's] claims are barred by sovereign immunity." *Id.* (citing *Robnett v. City of Big Spring*, 26 S.W.3d 535, 538 (Tex. App.—Eastland 2000, no pet.)); *see also El Paso Educ. Initiative, Inc. v. Amex Properties, LLC*, 385 S.W.3d 701, 704–05 (Tex. App.—El Paso 2012, pet. denied). Thus, while a plaintiff has the initial burden to plead the elements of his cause of action, and allege the basic facts that make up his claim, a plaintiff "will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex.2012) (citing *Miranda*, 133 S.W.3d at 228); *see also Dallas County v. Wadley*, 168 S.W.3d 373, 379 (Tex.App.—Dallas 2005, pet. denied) (plaintiff had no burden to present evidence that the County was aware of a dangerous condition on the premises until the County came forward with evidence to establish its "lack of knowledge").

In the present case, both parties allowed their arguments in the trial court, as well as on appeal, to morph into a lengthy debate over whether the Collins presented sufficient, admissible "jurisdictional evidence" to support their allegation that the City had actual knowledge that a dangerous condition existed at the pool that posed an extreme risk of harm to the public on the day of Jade's accident. However, missing from the record is any indication that the City ever came forward with evidence to negate the Collins' allegations that the City had actual knowledge that a dangerous condition existed at the pool that posed an extreme risk of danger to the public.

In those cases in which courts have found that the governmental entity came forward with sufficient evidence to shift the burden of production to the plaintiff, as described in *Miranda*, the governmental entity typically presented affidavits or other evidence from key officials or employees, averring that the entity itself had not been aware of any dangerous condition on the premises prior to the plaintiff's accident, or that the entity had not received reports of any similar incidents on the premises prior to the plaintiff's injury. It is upon the presentation of such evidence by the defendant governmental entity that the courts have found that the burden then shifts to the plaintiff to present evidence that the governmental entity did in fact have knowledge of the dangerous condition. *See, e.g., Univ. of Texas–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex.2008) (university presented testimony from officials that they had never received reports of similar accidents or problems occurring on the university's premises similar to the accident that the plaintiff experienced, which was sufficient to shift the burden to the plaintiff to present evidence that the university had actual knowledge of a dangerous condition on the premises); *City of Dallas v. Patrick*, 347 S.W.3d 452, 457 (Tex.App—Dallas 2011, no pet.) (trial court should have granted plea to the jurisdiction, where City came forward with evidence that it had not received any report or complaint of similar incidents on its property, and plaintiff failed to rebut that evidence); *City of Houston v. Harris*, 192 S.W.3d 167, 175 (Tex.App.—Houston [14th Dist.] 2006, no pet.) (City introduced evidence that it had no knowledge of prior accidents or complaints involving an alleg-

edly dangerous statue at the zoo that injured a young visitor, thereby shifting the burden to the plaintiff to come forward with evidence of the City's actual knowledge of the particular danger).

In the present case, however, the City never came forward with *any* evidence to dispute the Collins' factual allegation that the City had actual knowledge of a dangerous condition existing at the pool on the day of Jade's accident. Consequently, the burden never shifted to the Collins to come forward with any evidence to support that allegation.

Because the Collins properly pleaded a premises liability claim including that the City had actual, subjective knowledge of a dangerous condition posing an extreme risk of harm, and because the burden never shifted to the Collins to come forward with jurisdictional evidence to support their allegation regarding the City's knowledge, we conclude that the trial court did not err in denying the City's plea to the jurisdiction as to the Collins' premises liability claim. Issue One is overruled.

## Issue Two: Whether the Collins Alleged a Separate, Valid Negligent Use Claim Under the Tort Claims Act

■■■ The Collins also brought a separate cause of action against the City for "Negligent Use or Misuse of Personal Property." In that cause of action, the Collins claimed that on the day of Jade's accident, the City's employees were negligent in how they "used or misused" the filtration and drainage systems at the pool, which they describe as tangible "personal property." In particular, the Collins alleged that the City's employees turned on the filtration and drainage systems at the pool, even though they allegedly knew the systems were malfunctioning, and that the malfunction both caused the water at the pool to become dangerously cloudy and

further created a "suction" that could "cause a child to become entrapped in the suction and drain outlet." The petition further attempts to categorize the water itself as being "tangible personal property," and alleges that the City's employees were negligent in providing the cloudy water for the public's use that day. The Collins then aver that this alleged "misuse" of this property led to Jade's injuries.

In their pleadings, the Collins cite to Section 101.021(2) of the Tort Claims Act, which provides that a governmental entity is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2011). It appears that the Collins may have alleged a negligent use claim in order to avail themselves of the lesser standard of proof required for that claim, or in other words, in an attempt to avoid the heightened standard of proof applicable to a premises liability case under the Recreational Use Statute.

■■■ However, the "Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974) (rejecting the argument that the Tort Claims Act "creates two entirely separate grounds of liability" for negligent use or condition of real property and premise liability)); *see also Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 788 (Tex.2010) ("[a]lthough a species of negligence, premises liability cases are predicated on a property possessor's failure to warn or make safe danger-

ous or defective conditions on property[,]" and generally arise from injuries occurring from the "physical conditions or defects on property defects existing" on the property itself). Allowing "plaintiffs to characterize premises defect claims as claims caused by the negligent condition or use of personal or real property would render the Legislature's heightened requirements for premises defect claims meaningless." *Miranda*, 133 S.W.3d at 233.

The classification of claims under Texas law focuses on the true nature of the dispute rather than allowing a plaintiff to engage in "artful pleading ... to gain favorable redress under the law." *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex.2007). A plaintiff cannot simply recast a claim in order to avoid having its cause of action statutorily barred. *Ambulatory Infusion Therapy Specialist, Inc. v. N. Amer. Adm'rs, Inc.*, 262 S.W.3d 107, 112 (Tex.App.—Houston [1st Dist.] 2008, no pet.). Therefore, we must focus on the true nature of the dispute and determine whether the Collins have set forth a valid claim for the misuse of tangible personal property under the Tort Claims Act that can be considered separate and apart from their premises liability claim. *See Univ. of Texas Med. Branch at Galveston v. Kai Hui Qi*, 402 S.W.3d 374, 389–90 (Tex.App.—Houston [14th Dist.] 2013, no pet.) (when determining whether sovereign immunity has been waived, courts look to the real substance of a plaintiff's cause of action, not the plaintiff's characterization of her claims).

In answering this question, the courts have distinguished between allegations relating to the use or misuse of property that is not attached to the land and does not create any dangerous conditions on the premises, and allegations relating to defective or malfunctioning property that is "affixed to land or other property" and that does in fact create dangerous conditions on the property itself. *Harris*, 192 S.W.3d at 173. As our sister court recognized in *Harris*, for purposes of the Tort Claims Act, when an injury results from an alleged defect of an item that is affixed to land or real property that has created a dangerous condition on the property, the cause of action sounds in premises liability claim, rather than in negligence. *Id.* at 173–74 (injury occurring from a defect in a statue, which was affixed to the ground, presented a "premises question," and the plaintiffs would not be permitted to "recast" their claim to sound in negligence in order to avoid the heightened standards applicable to premises liability claims); *see also Miranda*, 133 S.W.3d at 233 (where plaintiff was injured at a state park due to a falling tree limb, her injuries arose from an allegedly dangerous condition on the property, and not from the state's alleged use or misuse of property, and the plaintiff was not permitted to recast her claim as one for negligence under the Tort Claims Act); *Tex. Dept. of Transp. v. Mackey*, 345 S.W.3d 760, 767 (Tex.App.—El Paso 2011, pet. denied) (plaintiff's claim that he was injured on a roadway due to fuel leak from a TXDOT truck sounded in premises liability, because it was the dangerous condition on the roadway that caused his injuries, and therefore the plaintiff was not entitled to recast his claim as one of general negligence claim under the Tort Claims Act for misuse of property).

In the present case, the Collins allege in their negligent use claim that Jade's injuries resulted from the City employees' use or misuse of the following items: (1) the pool water; (2) the pool's filtration system; (3) the pool's suction outlet drain; (4) the pool's drainage cover; and (5) the pool's pump. We find it significant that the Recreational Use Statute defines the term "premises" to include "land, roads, water,

watercourse, private ways, and buildings, structures, machinery, and equipment attached to or located on the land, road, water, watercourse, or private way." TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(2) (West Supp.2015). Further, although the Legislature did not define the term "premises" in the Tort Claims Act, the courts have generally defined that term in Tort Claim Act cases to mean a "building or part of a building with its grounds or other appurtenances." *See Harris,* 192 S.W.3d at 173; *Univ. of Tex. Med. Branch at Galveston v. Davidson,* 882 S.W.2d 83, 85–86 (Tex.App.—Houston [14th Dist.] 1994, no writ); *see also Miranda* 133 S.W.3d at 229–30 (for purposes of the Tort Claims Act, the definition of real property includes "land, and generally whatever is erected or growing upon or affixed to land"). Accordingly, we conclude that both the water located in the pool, as well as the pool's various items of equipment, which were attached to or located at the pool site, were properly considered part of the "premises" for purposes of both the Texas Tort Claims Act and the Recreational Use Statute.

More important, the factual allegations made by the Collins in both their premises liability claim and their negligence use claim are virtually identical. In both, the Collins allege that Jade's injuries were caused by the exact same malfunctions in the pool's equipment, which in turn, they allege were causing the exact same dangerous conditions to exist at the pool. Accordingly, we conclude that the Collins have failed to plead a separate, valid claim for negligent use, and that their negligent use claim must therefore be dismissed.

The Collins argue that their negligent use claim should not be dismissed but that we should remand that claim to give them the opportunity to amend their pleadings to state a valid claim of negligence use for which immunity has been waived and for which the trial court has jurisdiction. As we previously recognized in *Collins I,* plaintiffs generally should be given the opportunity to amend their pleadings to state a valid claim unless it appears from the record that it would be impossible for them to do so. *Collins I,* 440 S.W.3d at 887 (citing *Tex. Dept. of Transp. v. Sefzik,* 355 S.W.3d 618, 623 (Tex.2011)). Conversely however, no opportunity to replead should be given when the record reflects that it would be impossible for the plaintiffs to state a valid cause of action for which a court would have jurisdiction. *Reata Const. Corp.,* 197 S.W.3d at 378 (court of appeals correctly determined that the plaintiff's claims did not fit within any waiver of immunity categories under the Tort Claims Act and that the plaintiff was therefore not entitled to amend its petition).

In the present case, we have concluded as a matter of law that the Collins' claim for negligent use is not a separate, valid claim from their premises liability claim. It would therefore be impossible for the Collins to amend their pleadings to state a separate, valid claim for negligent use. Accordingly, Issue Two is granted, and we reverse the trial court's order to the extent it denies the City's plea to the jurisdiction as to the Collins' negligent use claim, and render judgment dismissing that claim for lack of jurisdiction.

## CONCLUSION

The order of the trial court denying the City's plea to the jurisdiction is reversed with regard to the Collins' negligent use claim, and that claim is hereby dismissed for lack of jurisdiction. With regard to the Collins' premises liability claim, we affirm the trial court's order denying the plea to the jurisdiction, and remand to the trial

court for further proceedings on that claim in accordance with this opinion.