COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| TEXAS TECH UNIVERSITY HEALTH SCIENCE CENTER, | § | No. 08-10-00363-CV |
|  | § | Appeal from |
| Appellant, | § | 210th District Court |
| v. | § | of El Paso County, Texas |
| LISA JACKSON, | § | (TC # 2010-2817) |
| Appellee. | § |  |

**O P I N I O N**

This is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction. Lisa Jackson brought suit against Texas Tech University Health Science Center (TTUHSC) alleging the medical negligence of one of its employees, Dr. Neil Adams. Specifically, Jackson alleged that: "Dr. Neil Adams, in the course and scope of his employment with Texas Tech University Health Science Center Opthamology Clinic, was negligent for applying a 'bandage contact' over [Jackson's] injured eye rather than obtaining prompt surgical intervention" for a penetrating eye injury Jackson sustained while sewing in hair extensions. TTUHSC filed an original answer which included a plea to the jurisdiction, complaining that Jackson's claims do not fall within the Texas Tort Claims Act's limited waiver of sovereign immunity. The trial court denied the motion and this interlocutory appeal follows. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(8)(West 2008). We reverse.

**FACTUAL SUMMARY**

On June 1, 2009, Lisa Jackson suffered a penetrating eye injury while attempting to affix hair extensions. According to her petition, she promptly sought care at Sierra Medical Center's

emergency room. The medical records indicate Jackson reported she was injured by "sewing 'hair in head' when the thick string snapped and hit patient in left eye." The emergency room physician transferred Jackson to Thomason Hospital with a diagnosis of "Eye Contusion; Retinal Detachment; Corneal Abrasion." Jackson was transferred via ambulance. After the physician at Thomason examined her injuries, she was discharged with instructions to go directly to the Texas Tech Health Science Center Opthamology Clinic. At the Clinic, Jackson was seen by Dr. Neil Adams who noted that a rubberband snapped and hit Jackson in the eye. Jackson had a corneal laceration and Dr. Adams discussed with her the risk of corneal scarring should they suture the cornea immediately. He recommended a bandage contact lens to allow natural healing of the cornea until it was stronger. Because Jackson wanted to return to her home in Las Vegas as planned, Dr. Adams scheduled an appointment for her with Dr. Kent Wellish for examination and surgery in Las Vegas the following day. He directed that the bandage contact lens be placed on the injured eye, ordered strict bed rest, the use of an eye shield, and prescribed pain medication and antibiotic drops to fight infection.

At approximately 10:25 p.m. that same night, Jackson returned to Thomason Hospital complaining of decreased vision. She reported having been to the hospital earlier that day due to a "***needle*** punctur[ing] her cornea." [Emphasis added]. This is the first mention of a needle. The emergency room physician contacted Dr. Adams and was informed of Jackson's upcoming appointment in Las Vegas. Jackson was prescribed Vicodin and Benedryl and then discharged.

On June 2, Jackson returned to Las Vegas but instead of attending her scheduled appointment with Dr. Wellish, she went to the emergency room at Summerlin Hospital. These medical records reflect that her injury was the result of accidentally sticking a needle in her eye. The emergency physician diagnosed a probable penetrating globe injury, noted pus draining from the injury, and administered antibiotics. The doctor then reapplied the eye patch and referred Jackson to Sunrise

Medical Center.

Jackson arrived at Sunrise Medical Center by ambulance and was seen by Dr. Edward Yee. Dr. Yee performed a suture repair of the corneal laceration, placed Jackson on antibiotics, diagnosed an eye infection, and referred her to Retina Consultants of Nevada.

On June 3, Jackson consulted with Dr. Roy Loo at Retina Consultants. The CT orbits and x-ray revealed the presence of a foreign object in the eye. That same day, Dr. Loo performed surgery and treated the infection, but his attempt to remove the foreign object was unsuccessful. During this surgery, the corneal wound was compromised and Dr. Loo had to place additional sutures in the cornea "to ensure a watertight seal."

On June 12, Jackson returned to Sunrise Medical Center where Dr. Yee performed a corneal transplant. His pre-surgery notes identify a needle penetrating the left eye causing an infection in the cornea. On June 16, Dr. Loo performed a second surgery to remove the needle fragment. This surgery was successful. Antibiotics were again administered to treat the infection. Unfortunately, Jackson's vision did not return and eventually her left eye was removed and replaced with a prosthetic.

Jackson brought this suit against TTUHSC alleging that Dr. Adams, in the course and scope of his employment, was negligent in applying the bandage contact lens rather than pursuing prompt surgical intervention. She also alleged that his negligence was a proximate cause of her injuries, including the development of an eye infection, the development of blindness, and the need for removal of the eye and replacement of the eye with a prosthetic device. She maintained that her claim fell within the limited waiver of sovereign immunity provided in Section 101.021(2) of the Texas Tort Claims Act because Dr. Adams' use of the bandage contact constituted a "use" of tangible personal property resulting in injury.

TTUHSC filed an answer and plea to the jurisdiction alleging the trial court lacked subject-matter jurisdiction based on sovereign immunity. It complained that not only did Jackson's pleadings fail to allege a waiver, the medical records conclusively established that her injury was not caused by any use of tangible personal property. The trial court denied the motion after a hearing and this appeal follows.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see Texas Department of Transp. v. Jones*, 8 S.W.3d 636, 637-38 (Tex. 1999); *Texas Tech University Health Sciences Center v. Mendoza*, No. 08-01-00061-CV, 2003 WL 1359549, at *1 (Tex.App.--El Paso March 20, 2003, pet. denied)(mem. op.); *City of Midland v. Sullivan*, 33 S.W.3d 1, 6 (Tex.App.--El Paso 2000, pet. dism'd w.o.j). The plaintiff bears the burden to allege facts affirmatively proving that the trial court has subject matter jurisdiction. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The existence of subject matter jurisdiction is a question of law. *State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We review *de novo* the trial court's ruling on a plea to the jurisdiction. *Mendoza*, 2003 WL 1359549, at *1; *City of Midland*, 33 S.W.3d at 6-7.

In considering a plea to the jurisdiction, a court may not weigh the merits but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002), *citing Texas Natural Reasource Conservation Com'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) and *Bland Independent School Dist.*, 34 S.W.3d at 554-55. On appeal, we may consider the pleadings, assertions of fact, and any evidence submitted

which is relevant to the jurisdictional issue. *Miller*, 51 S.W.3d at 587. We construe a plaintiff's pleadings liberally. *Texas Dept. of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Texas Ass'n of Business*, 852 S.W.2d at 446; *Arnold v. University of Texas Southwestern Medical Center at Dallas*, 279 S.W.3d 464, 467 (Tex.App.--Dallas 2009, no pet.). We must construe pleadings in favor of jurisdiction unless the petition, on its face, affirmatively demonstrates a lack of jurisdiction. *Arnold*, 279 S.W.3d at 467. Finally, we take as true all evidence favorable to the nonmovant, indulging every reasonably inference and resolving any doubts in the nonmovant's favor. *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

Because Jackson's pleadings allege a claim falling within a limited waiver of sovereign immunity, we must first look to the terms of the Act and determine the scope of the waiver. *See Kerrville State Hospital v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996); *Mendoza*, 2003 WL 1359549, at *2. Second, we must consider the particular facts of the case to determine whether it falls within that scope. *Miller*, 51 S.W.3d at 587.

## SOVEREIGN IMMUNITY UNDER THE TEXAS TORT CLAIMS ACT

To sue a governmental unit for a tort, the pleadings must state a claim under the Texas Tort Claims Act. *Jones*, 8 S.W.3d at 639; *Mendoza*, 2003 WL 1359549, at *1. It is undisputed that TTUHSC is a governmental unit entitled to the protections of sovereign immunity. Sovereign immunity protects a governmental unit from lawsuits for damages by depriving the trial court of subject matter jurisdiction absent the State's consent. *Miranda*, 133 S.W.3d at 224, 225; *University of Texas Medical Branch at Galveston v. Malveaux*, No. 14-09-00878-CV, 2010 WL 2968021, at *1 (Tex.App.--Houston [14th Dist.] July 29, 2010, pet. denied). When a claim is barred by sovereign immunity, the trial court lacks subject matter jurisdiction and a dismissal with prejudice is proper. *Id*.

*Waiver of Sovereign Immunity Under Section 101.021*

The Act provides a limited waiver of sovereign immunity only in certain, narrowly defined circumstances. *Miller*, 51 S.W.3d at 587. The specific provision under which Jackson alleges a waiver of sovereign immunity provides that:

A governmental unit in the state is liable for:

.    .    .

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(2)(West 2011). Where, as here, the claim does not involve a use of defective property, a plaintiff must allege a government employee used or misused the tangible personal property. *Lacy v. Rusk State Hosp.*, 31 S.W.3d 625, 629 (Tex.App.--Tyler 2000, no pet.). "Use" has been defined as "to put or bring into action or service; to employ for or apply to a given purpose." *White*, 46 S.W.3d at 869, *citing Mount Pleasant Independent School Dist. v. Estate of Lindburg By and Through Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989). At a hearing on a plea to the jurisdiction, the burden is on the governmental unit to show the employee's actions did not constitute a use of tangible property. *See Austin Independent School Dist. v. Guitierrez*, 54 S.W.3d 860, 863 (Tex.App.--Austin 2001, pet. denied).

However, mere involvement of tangible personal property in an injury will not, in and of itself, waive liability. *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d. 450 (1998). A plaintiff must also prove the injury was proximately caused by the use of the property. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 102.021(2); *Bossley*, 968 S.W.2d at 343; *City of Midland*, 33 S.W.3d at 7. To establish causation, the use of property must do more than just furnish the condition which makes the

injury possible. *Bossley*, 968 S.W.2d at 343. A plaintiff must show that the tangible personal property was the instrumentality of harm. *See id.*; *Batson v. City of Port Isabel*, 49 S.W.3d 425, 429 n.4 (Tex.App.--Corpus Christi 2001, pet. denied).

*Adequacy of Pleading*

TTUHSC asserts in a single issue that the trial court erred in denying its plea to the jurisdiction because Jackson failed to plead or prove facts sufficient to trigger an abdication of sovereign immunity under the Texas Tort Claims Act. Consistent with the arguments contained in its plea to the jurisdiction, the issue for review is comprised of three main contentions. First, it argues generally that Jackson's petition is insufficient to plead a waiver of sovereign immunity. Second, it alleges that Jackson's pleadings assert, at most, a claim for negligent medical judgment which does not waive sovereign immunity. Finally, it argues that the evidence proves Jackson herself caused the injury.

When sovereign immunity is at issue, a mere reference to the Act is insufficient to waive immunity or confer jurisdiction on the trial court. *Miller*, 51 S.W.3d at 587. A plaintiff must allege: (1) a use of tangible personal property by a governmental unit (2) that causes personal injury or death. TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(2).

We turn first to Jackson's pleading:

> Dr. Neil Adams, in the course and scope of his employment with the Texas Tech University Health Science Center Opthamology Clinic, was negligent for applying a 'bandage contact' over the injured eye *rather than* obtaining prompt surgical intervention for the patient's injuries. This negligence was a proximate cause of [Ms. Jackson's] injuries, including the development of an eye infection called endophthalmitis, development of blindness, and need for removal of the eye and replacement of the eye with a prosthetic device. [Emphasis added].

While the failure to use (non-use) of property does not waive sovereign immunity, the use or misuse of property does. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587-88 (Tex.

2001). Jackson alleges that the bandage contact lens ordered by Dr. Adams constitutes the use of tangible property. That may well be true. But there is no allegation, and no evidence, that the use or misuse of the lens caused her injuries.

By the Act's plain language, the waiver of sovereign immunity is limited to only those personal injuries *proximately caused by* a condition or *use of tangible* or real *personal property*. TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(2). "Proximate cause consists of both cause in fact and foreseeability." *See Mendoza*, 2003 WL 1359549, at *4. "Cause in fact" means Dr. Adams' use of the tangible personal property was a substantial factor in bringing about the injury. *See id*. The mere involvement of tangible personal property in the events leading to the injury is insufficient to meet the causation requirement. *Bossley*, 968 S.W.2d at 342-43. Instead, the property must be the instrumentality of harm. *Robinson v. University of Texas Medical Branch at Galveston*, 171 S.W.3d 365, 369 (Tex.App.--Houston [14th Dist.] 2005, no pet.).

At the hearing on the plea to the jurisdiction, Jackson's counsel relied heavily upon *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001). There, an inmate's wife brought suit against the Texas Department of Criminal Justice (TDCJ) following her husband's death from meningitis while incarcerated. *Miller*, 51 S.W.3d at 585. More specifically, Miller alleged that the employee doctor of TDCJ invoked the Act's waiver of immunity because he prescribed drugs which masked her husband's symptoms and he misused diagnostic tools so as to prevent a timely diagnosis. *Id*. at 585, 587. The TDCJ filed a plea to the jurisdiction arguing, in part, that Miller failed to establish a waiver of sovereign immunity because she failed to properly plead an injury caused by the use of tangible personal property. *Id*. at 585-86. The trial court denied the plea and the court of appeals affirmed. *Id*. at 586. The Texas Supreme Court then granted the petition for review. *Id*. It held that the use of property as alleged did not invoke the waiver of immunity. *Id*. at 589. "Mere

reference to the Tort Claims Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court." The property must have caused the injury. *Id*. at 587-88. Because it did not, the court reversed. *Id*. at 589.

Jackson's pleadings are insufficient to waive immunity. She does not allege that Dr. Adams misused the contact lens, she does not allege that the lens was defective, nor does she plead any facts which link the application of the contact lens to the eventual removal of her eye. Nothing ties the tangible personal property to the injury. There isn't even an allegation that the contact lens somehow caused her condition to worsen. Simply stated, her complaint is that Dr. Adams was negligent in his treatment because he recommended a lens and not immediate surgical intervention. *See University of Texas Medical Branch at Galveston v. Malveaux*, No. 14-09-00878-CV, 2010 WL 2968021, at *1 (Tex.App.--Houston [14th Dist.] July 29, 2010, pet. denied)(holding plaintiffs failed to plead sufficient factual allegations that the use or misuse of property caused the injuries, and no evidence established a causal connection between the use or misuse of the property and the harm, and noting that not every case invokes the Tort Claims Act because if it did a patient's complaint that a different form of treatment would have been more effective, "would always succeed so long as the offending doctor used some form of tangible property").

When considering a plea to the jurisdiction, a court is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issue raised. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. The record reflects that Dr. Adams warned Jackson of the risks of immediately suturing the cornea, placed the bandage contact on the eye, and scheduled an appointment with a retinal specialist the following day. There is no allegation that the contact lens was misused, that there were any complications from the application of the lens, or anything else which would indicate the lens actually caused Jackson caused the infection and led to

the removal of her eye. Instead, it is undisputed that Jackson herself caused the injury when she accidently pierced her eye with a needle and the needle broke. It is also undisputed that bacteria from that needle led to an infection in Jackson's eye and ultimately to the removal of the eye and replacement with a prosthetic. We thus conclude that Jackson's allegations fail to meet the causation requirement because the tangible personal property involved--the bandage contact lens--did not injure Jackson. *See Miller*, 51 S.W.3d at 585; *Malveaux*, 2010 WL 2968021, at *7.

*Negligent Medical Judgment*

Second, TTUHSC contends that Jackson's complaint is really one of negligent medical judgment which does not fall within the waiver of sovereign immunity. In determining whether sovereign immunity has been waived, we must look beyond a plaintiff's characterization of her claims and analyze the real substance of a plaintiff's cause of action. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *Bossley*, 968 S.W.2d at 343. Jackson's pleadings allege that Dr. Adams was negligent for applying a bandage contact over the injured eye instead of obtaining prompt surgical intervention. As the Supreme Court noted in *Miller*, the inmate's meningitis became progressively worse due to the passage of time and an alleged error in medical judgment. There was no evidence that any defendant's acts hastened or exacerbated his decline. *Miller*, 51 S.W.3d at 585; *see also Arnold*, 279 S.W.3d at 470 (any damages from the larger breast implants were caused by the alleged negligence of the physician in using his medical judgment; errors in medical judgment do not provide waiver of immunity under the Tort Claims Act); *Malveaux*, 2010 WL 2968021, at *1, *5 (the decision to perform breast-reduction surgery on the irradiated tissue of Mrs. Malveaux's right breast did not involve the use of tangible property; the decision to operate is an alleged error in medical judgment by the doctor and an error in medical judgment is not within the waiver of immunity).

The real substance of Jackson's cause of action is Dr. Adam's failure to act. As such, her

claim does not fall within the Act's waiver of immunity. *See University of Texas Medical Branch v. Thompson*, No. 14-06-00014-CV, 2006 WL 1675401, at \*4 (Tex.App.--Houston [14th Dist.] June 20, 2006, no pet.). We sustain the sole point. We reverse and render judgment dismissing with prejudice Jackson's suit for want of subject-matter jurisdiction.


September 21, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.