COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER-EL PASO, | § | No. 08-16-00164-CV |
| | | Appeal from |
| Appellant, | § | 327th District Court |
| v. | § | of El Paso County, Texas |
| GLORIA BUSTILLOS, | § | (TC # 2015DCV3141) |
| Appellee. | § | |

## **O P I N I O N**

This is an interlocutory appeal from the denial of a plea to the jurisdiction. Gloria Bustillos sued Texas Tech University Health Science Center-El Paso (TTUHSC) alleging that its physicians subjected her to a series of x-rays and invasive pelvic and anal examinations to assist U.S. Customs and Border Protection agents in determining whether Bustillos was smuggling illegal drugs from Mexico. No drugs were found. Bustillos sued for medical negligence, for "Assault/Battery Based on Negligence," and for violating her civil rights under 42 U.S.C. § 1983. TTUHSC filed a plea to the jurisdiction arguing that Bustillos failed to adequately plead a waiver of its sovereign immunity. We must decide whether TTUHSC's Eleventh Amendment sovereign immunity has been waived allowing Bustillos to bring a § 1983 action in state court. We must also determine whether Bustillos adequately pled facts demonstrating that TTUHSC's sovereign immunity was waived under the Texas Tort Claims Act (the Act), and if not, whether Bustillos should be afforded

an opportunity to replead. We reverse the trial court's denial of the plea to the jurisdiction and dismiss all of Bustillos' claims for lack of jurisdiction.

## FACTAL SUMMARY

Bustillos alleged she was returning to El Paso after visiting a friend in Juarez, Mexico, when agents detained her at the border because they suspected she was carrying illegal drugs. They conducted a pat down search but found no drugs and conducted a canine search, but the dog failed to alert to the presence of drugs. The agents then had Bustillos pull down her pants and underwear and conducted a non-invasive visual search of her vaginal and anal areas, but again found no drugs. They handcuffed and transported her to University Medical Center of El Paso[1] where two TTUHSC physicians, Dr. Parsa and Dr. Solomin,[2] ordered a series of x-rays to search her body, subjecting and exposing her to unnecessary radiation. The x-rays did not reveal the presence of drugs. The physicians then conducted an invasive pelvic and rectal exam, both of which failed to reveal any drugs. The doctors eventually released Bustillos to the agents who transported her back to the border and released her. She alleged that the searches humiliated and traumatized her physically and emotionally and that she incurred medical expenses for the unnecessary rectal and pelvic exams.[3]

In her second amended petition, Bustillos alleged a "Claim for Medical Negligence under Texas Tort Claims Act" in which she complained the physicians had negligently injured her when they "used and/or misused x-ray equipment, medical probes (including speculum), and other

---

[1] University Medical Center of El Paso is part of the El Paso County Hospital District's health care system. TTUHSC is a separate entity that provides care to patients at UMC as an affiliated teaching hospital.

[2] Bustillos alleged that both Dr. Parsa and Dr. Solomin were employees of TTUHSC. TTUHSC has not disputed this allegation on appeal.

[3] Bustillos states in her brief that she was billed for the doctors' exams.

2

devices to examine Plaintiff's vagina and rectum." She asserted that TTUHSC had waived its sovereign immunity for her personal injuries caused by the use or misuse of tangible personal property under the Act. She also pled a Claim for Assault/Battery Based on Negligence, alleging that "TTUHSC's negligence in failing to supervise its physician employees allowed those physicians to commit intentional torts of assault and battery on Plaintiff."

Bustillos also brought a claim under 42 U.S.C. § 1983 against TTUHSC for its physician employees' violation of her civil rights to be free from unreasonable search and seizure, alleging that the physicians knowingly violated the U.S. Constitution and law by proceeding to search her vagina and rectum after x-rays and visual examination showed no foreign body present and did so pursuant to an unconstitutional custom, policy and practice of performing unwarranted body cavity searches of detained individuals.[4]

TTUHSU filed a plea to the jurisdiction asking the trial court to dismiss all of Bustillos' claims for lack of jurisdiction because she had not, and could not, adequately plead that sovereign immunity had been waived. In particular, it argued that her pleadings did not demonstrate that she suffered an injury due to its employees' negligent use of tangible personal property and that her allegations of assault and battery demonstrated she was seeking to hold it liable for the intentional torts of its physicians. It also claimed and that the Act did not waive immunity for intentional acts or for any failure to supervise its employees. Finally, it contended that Bustillos could not maintain

---

[4] Bustillos had originally sued Dr. Parsa, Dr. Solomin, and others in state court, without suing TTUHSC. One of the named defendants removed the case to federal court. Bustillos subsequently added TTUHSC as a defendant in federal court. When TTUHSC asserted its Eleventh Amendment immunity from suit, Bustillos moved to remand her whole case back to state court. The federal court granted Bustillos' motion in part, remanding only Bustillos' claims against TTUHSC because the Eleventh Amendment barred those claims. After remand, TTUHSC remained the only named defendant in state court.

her § 1983 cause of action in state court because TTUHSC's sovereign immunity under the Eleventh Amendment had not been waived.

Bustillos responded that she had adequately pled a waiver of sovereign immunity arising from the negligent use of tangible personal property. She argued that her assault/battery claim based on negligence was a failure-to-supervise claim of negligently implemented policy, which does waive sovereign immunity. Bustillos also claimed that she was not required to show a waiver of immunity under the Act to maintain her § 1983 claim and that while the federal court is not available for § 1983 claims against a state entity, "such claims may be brought in state courts." After hearing, the trial court denied the plea to the jurisdiction without specifying the reasons why.

## STANDARD OF REVIEW

Immunity from suit implicates a court's subject matter jurisdiction. *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). "Whether a court has subject matter jurisdiction is a question of law, properly asserted in a plea to the jurisdiction." *Sampson*, 500 S.W.3d at 384; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Tex. Dep't of Aging & Disability Servs. v. Loya*, 491 S.W.3d 920, 923 (Tex.App.--El Paso 2016, no pet.). In a plea to the jurisdiction, a defendant may challenge either the adequacy of the plaintiff's pleadings or the existence of jurisdictional facts on the ground that they do not support a finding of subject matter jurisdiction. *Miranda,* 133 S.W.3d at 226; *City of El Paso v. Collins,* 483 S.W.3d 742, 748-49 (Tex.App.--El Paso 2016, no pet.).

The plaintiff has the burden to plead facts that affirmatively demonstrate the trial court's jurisdiction. *Miranda,* 133 S.W.3d 228; *Tex. Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993); *City of El Paso v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 894

(Tex.App.--El Paso 2016, no pet.). The question whether the plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that an appellate court reviews *de novo*. *Miranda,* 133 S.W.3d at 226; *Collins,* 483 S.W.3d at 748-49.

In determining whether a plaintiff has carried her burden to allege facts sufficient to establish subject matter jurisdiction, we review the allegations in the pleadings--accepting them as true and construing them in the plaintiff's favor--and any evidence relevant to the inquiry. *Miranda,* 133 S.W.3d at 226-27; *Loya*, 491 S.W.3d at 923. If the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Miranda,* 133 S.W.3d 226-27; *Waterblasting Techs., Inc.*, 491 S.W.3d at 894. However, if the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda,* 133 S.W.3d 227; *Waterblasting Techs., Inc.*, 491 S.W.3d at 894.

## CAN BUSTILLOS MAINTAIN AN § 1983 ACTION IN STATE COURT?

We first address whether the trial court had jurisdiction over the § 1983 cause of action. TTUHSC contends the trial court erred in refusing to dismiss it because sovereign immunity under the Eleventh Amendment has not been waived.[5] Bustillos concedes that TTUHSC is an arm of

---

[5] The United States Supreme Court has often referred to a state's sovereign immunity as "Eleventh Amendment immunity." *Alden v. Maine*, 527 U.S. 706, 712-13, 119 S.Ct. 2240, 2246-47, 144 L.Ed.2d 636 (1999). But the Supreme Court has also recognized that "Eleventh Amendment immunity" is "something of a misnomer," because that immunity is really an aspect of the Supreme Court's concept of state sovereign immunity. *Id*.; *see also Univ. of Tex. at El Paso v. Herrera,* 322 S.W.3d 192, 195 (Tex. 2010)("Our federal and state constitutional designs embody the principle of state sovereignty that shields States from private suits in their own courts and in the federal courts."). Nevertheless, the term "Eleventh Amendment immunity" has been used interchangeably with "state sovereign immunity" to refer to a state's immunity from suit without its consent.

the state and that sovereign immunity protects it from a § 1983 suit in federal court.[6] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989) (Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties," and this rule applies to governmental entities considered "arms of the State"). But she claims that she can maintain her § 1983 action in state court. We disagree.

The United States Supreme Court has clearly articulated that the Eleventh Amendment bars suits against a state under § 1983 unless Congress has exercised its power under the Fourteenth Amendment to override a state's sovereign immunity or unless the state itself has waived its immunity. *Will*, 491 U.S. 58, 66, 109 S.Ct. at 2309-10; *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Tex. Dep't of Aging & Disability Servs. v. Cannon*, 383 S.W.3d 571, 575 (Tex.App.--Houston [14th Dist.] 2012), *aff'd*, 453 S.W.3d 411 (Tex. 2015). Congress did not abrogate the states' sovereign immunity in enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *see also Graham*, 473 U.S. at 169 n.17, 105 S.Ct. at 3107. And the Texas Legislature has not waived the State's sovereign immunity for § 1983 claims. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007)("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *Cannon*, 383 S.W.3d at 575; *In re K.G.S.,* No. 14-12-00673-CV, 2014 WL 801127, at *5 (Tex.App.--

---

[6] A state agency is an arm of the state and is shielded by the sovereign immunity available to the state government. *Whitehead v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 854 S.W.2d 175, 180 (Tex.App.--San Antonio 1993, no writ); s*ee Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex. 1976). We have previously recognized that TTUHSC, "as a state agency," is immune from suit unless that immunity is waived. *Texas Tech Univ. Health Scis. Ctr. v. Lucero*, 234 S.W.3d 158, 168 (Tex.App.--El Paso 2007, pet. denied); *see also* TEX.GOV'T CODE ANN. § 572.002(10)(B)(West 2012)(defining a state agency to include a university system or institution of higher education).

Houston [14th Dist.] Feb. 27, 2014, no pet.)(mem. op.)(recognizing that Texas has not legislatively waived its sovereign immunity for § 1983 claims).

Accordingly, the State of Texas and any arms of the State are not subject to suit under § 1983 in either federal court or state court. *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990)("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court."); *Will*, 491 U.S. at 66, 109 S.Ct. at 2309-10; *see City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 366 (Tex.App.--Fort Worth 2009, no pet.)(under the Eleventh Amendment, "the State of Texas and its agencies are immune from claims based on federal law, whether brought in federal or state court"); *see also Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 582 (Tex. 2001)(recognizing the Texas Department of Public Safety is not subject to suit under § 1983 in state court).

We conclude the trial court lacked jurisdiction over the § 1983 cause of action. Nor is this a defect that can be cured by remand to give Bustillos an opportunity to replead. TTUHSC is entitled to sovereign immunity from the prosecution of any § 1983 action in state court no matter the allegations made to support that claim, and Bustillos has not suggested how this jurisdictional defect could be cured by amendment. *See Koseoglu*, 233 S.W.3d at 840 (refusing to remand for an opportunity to replead because the "pleading defects cannot be cured, and [plaintiff] has made no suggestion as to how to cure the jurisdictional defect"). We dismiss the § 1983 cause of action.

## DID BUSTILLOS ADEQUATELY PLEAD HER "CLAIM FOR MEDICAL NEGLIGENCE UNDER TEXAS TORT CLAIMS ACT"?

The parties do not dispute that TTUHSC is protected by sovereign immunity from tort claims and that Bustillos could not sue for the negligence of its employees unless her pleadings

stated a medical negligence claim falling within the limited waiver of immunity provided by the Act. *See Tex. Tech Univ. Health Sci. Ctr. v. Jackson*, 354 S.W.3d 879, 883-84 (Tex.App.--El Paso 2011, no pet.)(noting that TTUHSC could not be sued for negligence unless the plaintiff's pleadings stated a claim falling within the limited waiver of immunity contained in the Act); *see also Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001)(the Act creates an exception to the general rule of immunity "only in certain, narrowly defined circumstances").

In her "Claim for Medical Negligence under Texas Tort Claims Act," Bustillos alleged the TTUHSC physicians had committed negligent acts when they "used and/or misused x-ray equipment, medical probes (including speculum), and other devices" to examine her vagina and rectum. She asserted in particular that TTUHSC had waived its sovereign immunity pursuant to TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(2) and was liable for her injuries caused by the use or misuse of tangible personal property.[7] Section 101.021(2) provides in relevant part that a

---

[7] Bustillo specifically alleged:

> 6.01 Plaintiff brings a case under the Texas Tort Claims Act, under Tex. Civ. Prac. & Rem. Code, Section 101.001 *et. seq*.
>
> 6.02 Defendant TTUHSC has waived its sovereign immunity and is liable to Plaintiff pursuant to Tex. Civ. Prac. & Rem. Code, Section 101.021(2) for Plaintiff's personal injuries caused by use or misuse of tangible personal property.
>
> 6.03 Defendant TTUHSC, through its agents and/or employees (the physicians listed above), in the course of rendering medical care and treatment to Plaintiff, committed acts and/or omissions which constitute negligence as that term is defined by law including, but not limited to, the following acts and/or omissions:
>
> a. Physicians used and/or misused x-ray equipment, medical probes (including speculum), and other devices to examine Plaintiff's vagina and rectum; and
>
> b. Other misuses/uses of tangible property.
>
> 6.04 Each and all of the foregoing acts and/or omissions of TTUHSC's employee(s) and agent(s), singularly or in combination, were a proximate cause of the injuries and damages incurred by Plaintiff.

"governmental unit in the state is liable for . . . personal injury . . . so caused by a . . . use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(2)(West 2011). To show a waiver of sovereign immunity, Bustillos had to plead facts showing that its physicians' negligently used the x-ray equipment, medical probes, or other devices and that negligent use caused her personal injury. *Jackson*, 354 S.W.3d at 885 (to show a waiver of immunity under the Act, a plaintiff must allege a use of tangible personal property that caused personal injury or death).

TTUHSC contends the trial court erred in denying its plea to the jurisdiction because Bustillos failed to plead facts sufficient to show a waiver of its sovereign immunity. *See Miranda*, 133 S.W.3d at 226 (the plaintiff is required to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause). Bustillos' mere reference to the Act is insufficient to waive immunity or confer jurisdiction on the trial court. *Jackson*, 354 S.W.3d at 885 ("a mere reference to the Act is insufficient to waive immunity or confer jurisdiction"). At most, she alleges that tangible personal property was involved with her body cavity searches in some unspecified way. The mere involvement of tangible personal property will not, in and of itself, show a waiver under the Act. *Jackson*, 354 S.W.3d at 884, *citing Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998). For liability to exist, the plaintiff must specify both that a negligent act or omission occurred and that it proximately caused the injury. *Univ. of Tex. Health Sci. Ctr. at Houston v. DeSoto*, 401 S.W.3d 319, 325 (Tex.App.--Houston [14th Dist.] 2013, pet. denied); *see Jackson*, 354 S.W.3d at 884 (a plaintiff must plead facts showing that the injury was proximately caused by the use of the property). And the use of the property must do more than just furnish the condition that makes the injury possible; the plaintiff must show that the tangible personal property was the instrumentality of harm. *Jackson*, 354 S.W.3d at 884, 885. As

9

the Texas Supreme Court has explained, "Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585-86 (Tex. 1996). "If there is waiver in all of those cases, the waiver of immunity is virtually unrestricted, which is not what the Legislature intended." *Miller*, 51 S.W.3d at 588.

Bustillos counters that she filed a preliminary expert report as required by the Texas Medical Liability Act, which demonstrates that she is bringing a medical negligence claim. The expert report concluded that Drs. Solomin and Parsa breached the standard of care by proceeding to conduct a pelvic and rectal exam when the x-rays reported there was no foreign body present. Stated differently, Bustillos does not complain that the physicians negligently used x-ray equipment or misread the x-rays themselves. Nor does she contend that the doctors used or misused the medical devices, including a speculum, that intruded upon her body and caused undefined pain. The gravamen of her pleadings is that the physicians proceeded with a physical vaginal and rectal exam despite a negative finding on the x-ray. In short, that is not negligent activity, it is intentional conduct. Bustillos' reliance on cases such as *Texas Tech University Health Sciences Center v. Lucero*, 234 S.W.3d 158 (Tex.App.--El Paso 2007, pet. denied) is misplaced. There, the physicians misread the abdominal CT scan and failed to diagnose a bile leak leading to the patient's death. *Id.*, *citing Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30 (Tex. 1983). Here, the physicians correctly read the x-rays but proceeded anyway.

Bustillos also argues that her medical negligence claim can be construed as lack of informed consent based on her allegation that she "did not voluntarily or intelligently consent to any of the searches or bodily intrusions." She claims that under the Texas Medical Liability Act, lack of informed consent is a negligence claim. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.101

10

(West 2011)(a claim against a health care provider based on the failure to disclose the risks and hazards involved in medical care or surgical procedure, "the only theory on which recovery may be obtained is that of negligence" in failing to disclose the risks or hazards that could have influenced a reasonable person). Regardless, claims regarding the failure to receive informed consent do not fall within a waiver provision of the Act. *Kamel v. Univ. of Tex. Health Sci. Ctr. at Houston*, 333 S.W.3d 676, 686 (Tex.App.--Houston [1st Dist.] 2010, pet. denied)(plaintiff's "claims regarding failure to disclose risks and to receive informed consent do not fall within the waiver provision of the TTCA"); *Arnold v. Univ. of Tex. Southwestern Med. Ctr. at Dallas*, 279 S.W.3d 464, 469 (Tex.App.--Dallas 2009, no pet.)("Failure to receive informed consent has also been held to not waive immunity under the TTCA; therefore, the [plaintiffs'] attempt to waive immunity by [the physician's] use of implants she did not consent to fails."); *Mitcham v. Univ. of Tex. Med. Branch of Galveston,* 818 S.W.2d 523, 525 (Tex.App.--Houston [14th Dist.] 1991, writ denied)(plaintiff's allegation that physician failed to inform her that inserting an arteriogram needle could lead to blood clots was insufficient to show a waiver of immunity for use of tangible personal property; the fact that a needle was used in the procedure did not transform the conversation between physician and patient into the use of tangible personal property).

In sum, Bustillos' medical negligence allegations are insufficient to show a waiver of immunity because she has failed to allege any facts showing how the physicians were negligent in their use of the tangible personal property--*i.e.*, how they "misused" the tangible personal property--and she has failed to allege any facts to link alleged negligent use to alleged personal injury. *See City of Houston v. McCullough*, No. 01-02-00081-CV, 2003 WL 141251, at *4 (Tex.App.--Houston (1st Dist.) Jan. 9, 2003, pet. denied)(mem. op.)("McCullough generally and repeatedly asserts that the City negligently used or 'implemented' its tangible personal property,

11

but she never explains what acts constituted negligence, what personal property was negligently used, or how this negligence caused her injury. . . . Allegations such as these, which consist of general conclusions without any assertions of fact, do not satisfy the waiver provisions of the TTCA.").

## DID BUSTILLOS ADEQUATELY PLEAD HER "CLAIM FOR ASSAULT/BATTERY BASED ON NEGLIGENCE"?

In her "Claim for Assault/Battery Based on Negligence," Bustillos alleged in one sentence that "TTUHSC's negligence in failing to supervise its physician employees allowed those physicians to commit intentional torts of assault and battery on Plaintiff." In categorizing the acts of the physicians as intentional torts of assault and battery, Bustillos was referring to her prior allegation that she "did not voluntarily or intelligently consent to any of the searches or bodily intrusions." Under Texas common law, a physician who provides treatment without consent commits a battery. *See Miller ex rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 767 (Tex. 2003)("the general rule in Texas is that a physician who provides treatment without consent commits a battery"); *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005)("Medical treatment will not constitute a battery unless it is provided without the patient's consent."); *see also Felton v. Lovett*, 388 S.W.3d 656, 660 (Tex. 2012)("when Section 74.101 [defining informed-consent claims as negligence claims] does not apply, the common law does").

But the Act does not waive sovereign immunity for the intentional torts of assault and battery. TEX.CIV.PRAC.&REM.CODE ANN. § 101.057(2)(Tort Claims Act "does not apply to a claim . . . (2) arising out of assault, battery, . . . or any other intentional tort"). And TTUHSC, as a state agency, cannot be held liable for the intentional acts of its employees. *See Univ. of Tex. Med. Branch at Galveston v. Hohman,* 6 S.W.3d 767, 777 (Tex.App.--Houston [1st Dist.] 1999,

12

pet. dism'd w.o.j.)(holding that UTMB, as a state agency, could not be liable for the intentional torts of its employees).

Nor do claims regarding the failure to receive informed consent fall within a waiver provision. *Kamel*, 333 S.W.3d at 686; *Arnold*, 279 S.W.3d at 469. And while Bustillos expressly characterizes this as a direct claim against TTUHSC for its alleged failure to supervise the physicians, claims of negligent supervision are claims for general medical negligence that do not involve the use of tangible property and do not fall within the waiver in Section 101.021(2). *Kamel*, 333 S.W.3d at 686; *Arnold*, 279 S.W.3d at 469; *El Paso Mental Health & Mental Retardation Ctr. v. Crissman*, 241 S.W.3d 578, 582 (Tex.App.--El Paso 2007, no pet.)("Allegations of negligent supervision do not satisfy the limited waiver of immunity contained within the Tort Claims Act.").

Despite her express characterization of this claim as a failure-to-supervise claim, Bustillos argues that it is actually one of "negligently implemented policy, which *does* waive sovereign immunity." [Emphasis added]. The policy to which Bustillos refers is one referenced in the § 1983 section of her pleadings that "UMC policy L-8 on searches by hospital personnel does not permit an invasion of a person's body for purposes of a search without either a valid, written, and signed informed consent form or a search warrant." Several problems exist with this argument, but the fatal one is that her own pleadings reveal that policy L-8 is a "UMC policy" applicable to "searches by hospital personnel." TTUHSC is a separate entity from UMC, and its physicians are not UMC personnel.

### SHOULD BUSTILLOS BE GIVEN AN OPPORTUNITY TO REPLEAD?

Having determined that Bustillos did not adequately allege a waiver of sovereign immunity for either her medical negligence claim or her assault and battery claim based on negligence, we

13

must determine whether Bustillos should be given an opportunity to replead. Normally, unless the pleadings affirmatively negate jurisdiction, a plaintiff should be given an opportunity to amend. *Miranda,* 133 S.W.3d 227; *Waterblasting Techs., Inc.*, 491 S.W.3d at 894. Bustillos argues that although she has alleged in her § 1983 cause of action that TTUHSC and its physicians acted intentionally, she has alleged her two negligence causes of action in the alternative, and there is nothing in those specific allegations to affirmatively negate jurisdiction. TTUHSC counters that we must look at her pleading as a whole and focus on the real substance and not her characterization of those claims. Indeed, we have previously recognized that "[i]n determining whether sovereign immunity has been waived, we must look beyond a plaintiff's characterization of her claims and analyze the real substance of a plaintiff's cause of action." *Jackson*, 354 S.W.3d at 886, *citing Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *Arnold*, 279 S.W.3d at 470 ("It is well established that the treatment of claims under Texas law focuses on the true nature of disputes rather than allowing artful pleading to gain favorable redress under the law."). TTUHSC contends that in applying these rules here, no waiver of its sovereign immunity is possible because Bustillos complains of intentional conduct, not negligence. We agree. Bustillos is not claiming that the TTUHSC physicians used the tangible personal property negligently, but that they deliberately used the personal property to perform an invasive search of her body without her consent. She is simply attempting to recast her § 1983 claim and allegations of intentional conduct as the negligent use of tangible personal property and the failure to supervise to avoid sovereign immunity barriers. We conclude that Bustillos' pleadings affirmatively negate jurisdiction, and she is not entitled to an opportunity to amend.[8] We reverse the trial court's order

---

[8] Because of our ruling, we do not reach TTUHSC's contention that derivative immunity protects it from Bustillos' claims because the federal district court, after remand, determined that Dr. Parsa and Dr. Solomin, in their personal

denying TTUHSC's plea to the jurisdiction and dismiss the entirety of Bustillos' claims for want of jurisdiction.

## Addendum on Derivative Immunity

TTUHSC contends that derivative immunity protects it from Bustillos' claims because the federal district court determined that Dr. Parsa and Dr. Solomin, in their personal capacities, were protected by qualified immunity for performing the body cavity searches (the federal court made this ruling after it had already remanded Bustillos' case against TTUHSC to state court). TTUHSC bases this contention on *DeWitt v. Harris County*, 904 S.W.2d 650, 653-54 (Tex. 1995), in which the Texas Supreme Court held a governmental entity does not have respondeat superior liability under Section 101.021(2) when the employee possesses official immunity. *Id*. at 651.

*DeWitt* involved the application of "official immunity" in a wrongful death action against a deputy constable and Harris County, in which the decedent ran into a car stranded on the roadway after an accident. The plaintiff contended that the constable who investigated the accident was negligent in failing to remove the car from the roadway or to otherwise make the scene safe. The plaintiff's claim against Harris County was based solely on respondeat superior liability for the negligent acts of the constable. The jury found the constable negligent, but the trial court concluded the constable was entitled to official immunity, but then entered judgment against the county. *Id*. The Texas Supreme Court recognized that when a governmental unit's liability is based on respondeat superior liability for an employee's negligence arising from the misuse of tangible personal property under section 101.021(2), official immunity, like any other affirmative

---

capacities, were protected by qualified immunity for performing the body cavity searches. *See DeWitt v. Harris County*, 904 S.W.2d 650, 651 (Tex. 1995)(holding a governmental entity does not have respondeat superior liability under Section 101.021(2) when the employee possesses official immunity); TEX.R.APP.P. 47.1 (the court of appeals' opinion need only address issues "necessary to final disposition of the appeal").

15

defense becomes relevant to the governmental entity's liability. *Id*. at 654. Accordingly, it held the county was not liable under section 101.021(2) for the negligence of an employee when the employee has no liability because of official immunity. *Id*.

TTUHSC argues that *DeWitt* controls here because Bustillos' the federal court subsequently dismissed Bustillos' claims against the physicians based on "qualified immunity." In federal court, Bustillos asserted claims under § 1983 and unspecified intentional torts against the physicians based on the same conduct she asserted against TTUHSC in state court, *i.e.*, ordering x-rays and conducting pelvic and rectal exams. The federal court granted the physicians' motion to dismiss.[9] The federal court dismissed the § 1983 claims against the physicians in their individual capacity under the qualified immunity doctrine, which shields state officials from money damages unless the plaintiff pleads facts showing the official violated a statutory or constitutional right and the right was clearly established at the time of the conduct. The court held that the physicians did not violate Bustillos' Fourth Amendment right because, although these were "non-routine" searches (*i.e.*, invasive) requiring reasonable suspicion to search, physicians are not required to have knowledge of search and seizure law and are not required to articulate reasonable suspicion when conducting searches at the behest of federal officers. Further, the law was not clearly established at the time of the searches, because current law did not provide the physicians

---

[9] The court dismissed the intentional tort claims against the physicians under Section 101.106(e), which mandates dismissal of employees when both the governmental entity and its employees are sued and the governmental entity moves for dismissal of the claims against the employees. The court dismissed the § 1983 claims against the physicians in their official capacities because those suits were in effect suits against TTUHSC itself and because her claims did not fall within the *Ex Parte Young* exception for prospective relief since Bustillos sought money damages.

16

with fair warning that they must have knowledge of search and seizure law and must conform to the Fourth Amendment in their medical practice.[10]

There several problems with applying *DeWitt*. First, the federal court's ruling was based on "qualified immunity" which evaluates whether there was a violation of a constitutional right and whether that right was clearly established at the time. *DeWitt*, on the other hand, was based on a finding of "official immunity." Official immunity in Texas looks at whether the government employee was performing a discretionary job duty in good faith. An employee acts in good faith for official-immunity purposes if "a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *R.R. Comm'n of Texas v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 569 (Tex. 2016). These are two different inquiries, and thus the federal court did not determine that a reasonably prudent government physician, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *See Livingston v. Taylor*, No. 13-07-00690-CV, 2009 WL 2397542, at *2 n.5 (Tex.App.--Corpus Christi-Edinburg Aug. 6, 2009, no pet.)(mem. op.) (recognizing that the terms "official immunity" and "qualified immunity" are often used interchangeably, but that the doctrines are separate defenses; qualified immunity applies when federal law claims are raised while official immunity applies when state law claims are raised); *Hudson v. Vasquez,* 941 S.W.2d 334, 338 (Tex.App.--Corpus Christi 1997, no writ)(noting "the

---

[10] As to the claims based on the Fifth Amendment due process requirement, the court held that Bustillos had failed to allege any facts showing deliberate indifference that the physicians disregarded a known and excessive risk to Bustillos' health and safety.

17

federal test is nevertheless distinct from the state test, and resolution of state law immunity issues does not resolve federal immunity issues under section 1983").

Second, the federal court's ruling was based on Bustillos' § 1983 pleadings in federal court, not her "negligence" pleadings in state court, to which TTUHSC is asking this Court to apply them.

Third, TTUHSC is essentially asking this Court to rule that Bustillos is bound by the federal court ruling in a separate proceeding in state court. That would require applying either the doctrine of "claim preclusion" (res judicata), which requires a final judgment, or the doctrine of "issue preclusion" (collateral estoppel), which requires that the fact issue to be precluded have been actually litigated in the prior proceeding. The parties agree there is no final judgment in the federal court lawsuit (as least at the time all the briefs were filed), and the federal court did not litigate any fact issues, but only applied the law to Bustillos' federal court pleadings. These problems distinguish this case from *DeWitt* where the ruling was made in the same case, the ruling was specifically based on official immunity (as opposed to qualified immunity), the ruling was made after trial where factual issues had been decided, the judgment was final, and the ruling was applied in the same case, not to a different case in a different jurisdiction.


June 13, 2018

                    ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment

18